Earl JENSON, Respondent,

v.

JOINT INDEPENDENT SCHOOL DISTRICT NO. 287, Appellant.

No. C1-87-77.

Court of Appeals of Minnesota.

June 23, 1987.

Review Denied Aug. 19, 1987.

Richard T. Wylie, Bloomington, Donna L. Roback, Minneapolis, for respondent.

Thomas M. Sipkins, Minneapolis, for appellant.

Heard, considered and decided by FOLEY, P.J., and FORSBERG and STONE *, JJ.

## OPINION

BRUCE G. STONE, Judge.

This appeal requires consideration of remedies available to a teacher with continuing contract rights who was placed on unrequested leave of absence (ULA), and of seniority rights afforded the teacher under the collective bargaining agreement. Appellant school district questions the trial court's jurisdiction to review the decision to place the teacher on ULA. Appellant further claims the trial court erred in determining that the school district breached respondent teacher's contract. Respondent requests review of the trial court's refusal to award attorney fees under the Minnesota Human Rights Act. We affirm.

## FACTS

Appellant Joint Independent School District No. 287 is a special purpose school district providing vocational and technical education at the secondary level. In January 1973, appellant hired respondent Earl Jenson to teach auto mechanics at its Hennepin Technical Centers (HTC). One year later, Jenson was promoted to supervisor of HTC's transportation department. Jenson retained this administrative, non-bargaining unit position from 1974 through the 1981–82 school year.

In April 1982, due to declining enrollment and financial considerations, appellant resolved to abolish the transportation department supervisor position. Pursuant to this decision, appellant notified Jenson of his proposed placement on ULA. At the same time, appellant notified Ken Koeper, an auto mechanics instructor in his first year of teaching, that his probationary contract would not be renewed.

Jenson was subsequently hired to replace Koeper as auto mechanics instructor. The teachers' union filed a grievance, claiming appellant violated the collective bargaining agreement by permitting Jenson to "bump" Koeper.

The grievance proceeded to binding arbitration in October 1982. The arbitrator noted that appellant and the teachers' union had included a negotiated ULA plan in their collective bargaining agreement. *See* Minn.Stat. § 125.12, subd. 6a (1986) ("The school board and the exclusive bargaining representative of the teachers may negotiate a plan providing for unrequested leave of absence.") Under the negotiated ULA plan, seniority was contingent on 1) licensing, 2) length of service, and 3) qualifications. To satisfy the qualifications requirement, the teachers were to have documentation on file by January 1 of each year that showed a minimum of nine consecutive

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

months of full-time teaching experience in the subject area within the last five years.

As an administrator, Jenson was not subject to the collective bargaining agreement or its negotiated ULA plan. He was, however, a teacher with continuing contract rights within the meaning of the relevant statute, and was therefore protected by the following statutory provision:

> No teacher who has acquired continuing contract rights shall be placed on unrequested leave of absence while probationary teachers are retained in positions for which the teacher who has acquired continuing contract rights is licensed;

Minn.Stat. § 125.12, subd. 6b(a) (1986).

The arbitrator, who had the narrow task of construing and applying the terms of collective bargaining agreement to the claims alleged in Koeper's grievance, did not mention Jenson's rights under subdivision 6b. Instead, apparently believing Jenson was subject to the collective bargaining agreement and the negotiated ULA plan, the arbitrator found Jenson did not have seniority over Koeper because Jenson did not have documentation on file showing nine months of full-time teaching within the last five years. The arbitrator did not refer to the fact that Koeper, who began teaching in September 1981, also did not have the necessary teaching experience documentation on file by January 1, 1982. The arbitrator sustained the grievance and ordered Koeper's reinstatement.

Although the arbitrator did not consider the protections under subdivision 6b, he acknowledged another potential conflict between section 125.12 and the collective bargaining agreement, citing the statute's provision that school districts may terminate a probationary teacher's contract as the school district "shall see fit." *See* Minn. Stat. § 125.12, subd. 3 (1986). However, the arbitrator concluded he could not resolve the conflict without exceeding his authority, saying that only a "court of competent jurisdiction" could make that determination. The school district, however, did not appeal the arbitrator's decision or otherwise seek judicial determination of the issue. Jenson was not a party to the Koe-

per arbitration hearing and thus had no standing to appeal.

Jenson had begun teaching in his reassigned position in late August 1982. When Koeper's reinstatement took effect in February 1983, Jenson was transferred to another HTC campus, where he replaced a teacher who was on sick leave. In April 1983, appellant again adopted a resolution proposing to place Jenson on ULA because of financial limitations. Appellant did not propose to place Koeper, who was still a probationary teacher, on ULA. Jenson had become a bargaining unit teacher subject to the collective bargaining agreement and the negotiated ULA plan when he returned to the classroom in August 1982. He made a timely request for a hearing, which took place in June 1983.

Because Jenson's recent teaching experience began at the end of August 1982, he still did not have documentation on file by January 1, 1983 showing a minimum of nine consecutive months of full-time teaching in the past five years. The hearing examiner therefore concluded Jenson was not "qualified" within the meaning of the negotiated ULA plan, and recommended that Jenson's teaching contract be terminated. The school board's executive committee adopted the hearing examiner's recommendation and placed Jenson on ULA.

Jenson then filed suit in district court, alleging breach of contract, age discrimination, negligent or intentional infliction of emotion distress, and breach of a covenant of good faith and fair dealing. The case was heard in June 1985. However, because the trial judge died before deciding the case, another judge was assigned to review the matter on the basis of the transcript and additional arguments made by counsel in July 1986.

The trial court agreed Jenson "did not have the requisite nine consecutive months of full-time teaching experience in automobile mechanics * * *." However, the trial court concluded that "by virtue of the grandfather clause [of the negotiated ULA plan, Jenson] was qualified within the terms of [the contract]." In making this determination, the court also considered ev-

idence of past practice, finding that prior to April 1982, "it had been the school district's policy to terminate probationary teachers according to the Board's discretion and to reassign department supervisors back to the bargaining unit teacher positions, allowing full credit for seniority rights both as teachers and as administrators."

As additional grounds for finding appellant had breached Jenson's contract, the trial court found Jenson was protected by subdivision 6b. The court rejected appellant's argument that subdivision 6b did not apply in this case, concluding: "Statutory rights cannot be abrogated or eliminated by the presence of a negotiated right under a collective bargaining agreement. * * * The fact that [appellant] contracted independently with the Union cannot operate to usurp [Jenson's] 6b seniority rights which are superior to Mr. Koeper's contract rights * * *."

The trial court therefore found for Jenson on the breach of contract claim, concluding he is entitled to be reinstated to the position of auto mechanics instructor and to $122,032 for lost wages and other lost benefits. The court made no findings on the other causes of action. The school district appeals on grounds of jurisdiction, sufficiency of the evidence, and conclusions contrary to law. Jenson requests review of the trial court's denial of attorney fees for his age discrimination claim under the Minnesota Human Rights Act.

### ISSUES

1. Did the trial court properly exercise jurisdiction?

2. Are the trial court's findings and conclusions supported by the evidence and the applicable law?

3. Did the trial court err in failing to award attorney fees to respondent?

### ANALYSIS

1. "Teacher dismissals have historically been afforded only appellate review by writ of certiorari." *Grinolds v. ISD No. 597*, 346 N.W.2d 123, 127 (Minn.1984). Because Jenson sought relief by bringing a separate civil action rather than by petitioning for a writ of certiorari, appellant asserts he improperly failed to exhaust all available administrative remedies. Appellant claims *Grinolds* is dispositive, such that the trial court did not have jurisdiction over Jenson's breach of contract claim. We disagree.

■ No particular form of relief is dictated by the statute under which Jenson was placed on unrequested leave. *See* Minn.Stat. § 125.12, subd. 11 (1986). Although review by writ of certiorari ordinarily follows a teacher's dismissal, specific circumstances may permit or even require pursuit of other methods of review. *See, e.g., Walter v. ISD No. 457*, 323 N.W.2d 37, 38 (Minn.1982) (when teacher placed on ULA did not request a hearing but brought declaratory judgment action for damages, reinstatement, and a declaration that the school district had violated the teacher tenure statute, the supreme court affirmed the trial court's decision that the district had violated both the statute and the teacher's contract); *Jerviss v. ISD No. 294*, 273 N.W.2d 638, 641 (Minn.1978) (teacher brought a declaratory judgment action, seeking reinstatement and back wages, and claiming her statutory continuing contract rights had been violated because she was not told she could request a hearing).

In addition, the doctrine of exhaustion of administrative remedies "is not absolute; it is tempered by practicality. The doctrine * * * is not applicable where it would be futile to seek such redress; consequently, a party so situated may go to the courts for redress." *City of Richfield v. Local No. 1215*, 276 N.W.2d 42, 51 (Minn.1979). Here, the practicalities include: (1) an extended and confusing procedural history, which has repeatedly denied Jenson relief; (2) the existence of causes of action in addition to the statutory breach of contract claim; (3) the school district's failure to appeal the 1982 Koeper arbitration decision, which contained errors of law prejudicial to Jenson and in which the arbitrator urged review by a "court of competent jurisdiction;" and (4) the fact that Jenson had no standing to appeal the arbitrator's

decision. *See Pirrotta v. ISD No. 347*, 396 N.W.2d 20, 21–22 (Minn.1986) (teacher not collaterally estopped from litigating his seniority claim because he was not a party to the proceeding in which his seniority was detrimentally affected).

The practicalities of the present circumstances show that review by certiorari was an inadequate remedy, and that the trial court properly exercised jurisdiction over Jenson's claims.

■ 2. The trial court determined Jenson was "qualified" within the meaning of the negotiated ULA plan by virtue of the grandfather clause of the collective bargaining agreement. We agree. The grandfather clause states:

> Seniority will be applicable district-wide based on qualifications, licenses, and initial date of hire. Department Chairpersons appointed before December 1, 1977, and those appointed from within this unity, will retain and accrue seniority.

Until June 30, 1982, Jenson was a Department Chairperson, within the meaning of the clause.

Appellant argues the evidence showed that the term "seniority" in the grandfather clause refers only to length of service, and does not affect the requirement of "qualifications." Appellant's position is not supported by the contract's own definition of seniority, which refers to qualifications and licenses *as well as* length of service. The trial court's determination is supported by its review of past practice in the school district, which revealed that appellant's policy was to terminate probationary teachers and reassign department supervisors back to the bargaining unit teacher positions, *allowing full credit* for seniority rights as both teachers and administrators. We find no clear error in the trial court's assessment of the evidence. *See Id.* Indeed, any other result would deprive Jenson and other continuing contract teachers who have been working in administrative positions of all seniority rights, a result that the parties evidently and knowingly sought to avoid by including the grandfather clause in the contract's provisions.

Appellant alleges error in other of the trial court's findings, claiming: (1) the trial court improperly focused on the 1982 placement on ULA rather than on the 1983 placement, even though the 1983 action constituted the actual breach of contract; (2) the court erroneously referred to Jenson as continuously covered by the collective bargaining agreement, even though he was a non-bargaining unit administrator until the 1982–83 school year; and (3) the court's reliance on Jenson's subdivision 6b rights was inconsistent with the statute.

As previously stated, however, the finding that Jenson was qualified by virtue of the grandfather clause supports the trial court's ultimate conclusion that appellant breached Jenson's contract, and that conclusion is supported by common sense as well as the evidence and applicable law. Under these circumstances, it is not necessary to resolve the statutory or other implications or the trial court's reliance upon them.

Jenson, a continuing contract teacher who had been employed by appellant for ten years when he was placed on ULA in 1983, had negotiated seniority rights to a continuing contract. Appellant's decision to place Jenson on ULA deprived him of those rights and breached Jenson's teaching contract.

3. Respondent Jenson asks this court to remand to the trial court for findings on the age discrimination claim, with the goal of obtaining attorney fees as permitted under the Minnesota Human Rights Act. The trial court made no mention of any of Jenson's causes of actions other than the breach of contract action. The record, however, does not contain sufficient evidence to support a prima facie case of age discrimination, and we affirm the trial court's denial of attorney fees on this basis.

## DECISION

The trial court made no clear error in finding respondent is a qualified teacher under the grandfather clause. The trial

court did not err in denying respondent attorney fees.

Affirmed.